IN THE COURT OF THE U.S. DISTRICT COURT OF THE NORTHERN DISTRICT
EASTERN DIVISION 219 S. DEARBORN ST. CHICAGO, IL 60604 DIRKSEN FEDERAL BUILDING

STATE OF ILLINOIS ) SS: 28 U.S.C. §1746 · 28 U.S.C. §1651(a) · OR; 735 ILCS 5/1-109 et seq
COUNTY OF DUPAGE )

HERMAN L. NITZ JR., I.R.# 42337,        CASE NO# 2008-C-0334
PRO SE,        PLAINTIFF,                THE HONORABLE WILLIAM HIBBLER, U.S. DIST.
                                          JUDGE PRESIDING.
VS.
TONY("DOE"), et al.,
                DEFENDANTS,

FILED
6-23-2008
JUN 23 2008
JUN 23 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

PRO SE DECLARATION AND NOTICE OF MOTION TO ADDRESS THE COURT AND REQUEST
TO ADD ALLEGATIONS AND DEFENDANTS PURSUANT TO RETALITORY AND CONSPIRATORY ACTIONS
BEING TAKEN AGAINST THE PLAINTIFF BY DEFENDANTS AND THEIR AGENTS AND OFFICIALS IN
RETALIATION FOR NITZ FILING COMPLAINTS AND GRIEVANCES AGAINST DEFENDANTS AND STATE AGENTS.

    NOW COMES PRO SE PLAINTIFF; "HERMAN L. NITZ JR., I.R.#42337 (NITZ)"
TO SUBMIT A PRO SE MOTION AND DECLARATION TO THUS ADDRESS THE COURT DUE TO OTHER
ILLEGAL ACTIONS BEING TAKEN AGAINST HIM IN RETALIATION FOR FILING COMPLAINTS AND
GRIEVANCES AS SUBSTANTIAL STEP IN FURTHERANCE OF A TACIT AGREEMENT AND MEETING
OF THE MINDS TO DENY NITZ HIS CIVIL RIGHTS AND CONSPIRACY TO OBSTRUCT THE DUE COURSE OF
THE ADMINISTRATION OF JUSTICE AND DENY EQUAL PROTECTION OF THE LAWS.   IN SUPPORT
THEREOF, NITZ STATES THE FOLLOWING:

1. THE DEFENDANTS ALREADY NAMED IN THIS ACTION, WHO THUS HAVE RECENTLY BEEN DISCOVERED
AND IDENTIFIED HAVE ENGAGED IN MORE ILLEGAL ACTION AND CONDUCT AND AS THERE IS
A COMMON NUCLEUS OF RELATED VIOLATIONS BY SAME AND OTHER PERSONS AND PUBLIC
OFFICIALS, THE PLAINTIFF HERMAN L. NITZ JR., I.R.#42337 ("NITZ") REQUESTS PERMISSION
OF THIS HONORABLE COURT TO SUBMIT THE FOLLOWING DECLARATION ALLEGING FACTS AN ALLEGATIONS
TO BE USED IN AN AMENDED COMPLAINT. AND; BECAUSE NITZ REQUESTS TO DO SO, NITZ
PUTS FORTH THE FOLLOWING DETAILS TO PRESERVE AND TO RECORD RELEVANT ISSUES TO BE
RELIED ON IN THE FUTURE TO AVOID RELIANCE ON MURKY MEMORIES, VAGUE OR DISTORTED
DETAILS, OR IF PERHAPS QUESTIONS OF MATERIAL FACTS OR TESTIMONY CANNOT ADEQUATELY OR
SUFFICIENTLY BE RECALLED.

2. NITZ WAS ORIGINALLY ARRESTED FOR A DRIVING OFFENSE (REVOKED OR SUSPENDED)
LICENSE, BY GLENDALE HEIGHTS POLICE IN 2005 BUT DUE TO OTHER OCCURRENCES
MORE HAS BEEN REVEALED THAT JUST RECENTLY HAS CAUSED NITZ TO DISCOVER FOR
FIRST TIME, THE FOLLOWING "TRUTH" AND IDENTITIES OF CERTAIN PERSONS AND
UNTIL NOW NITZ COULD NOT HAVE ALLEGED THESE UPCOMING DETAILS FOR SEVERAL REASONS
NITZ DID NOT KNOW HE WOULD BE ABLE TO PROVE THIS TRUTH UNTIL RECENTLY, AND
ALSO UNTIL HE KNEW HE COULD ACTUALLY DO SO DID NOT WANT TO MAKE ALLEGATIONS UNLESS
OR UNTIL HE HAD NAMES AS WELL AS EVIDENTIARY SUPPORT OF THOSE ALLEGATIONS, NITZ ALSO
ASSERTS THAT AS A DIRECT AND PROXIMATE RESULT OF HIS FILING DOCUMENTS, GRIEVANCES
APPEALS AND OBTAINED DOCUMENTATION TO SHOW THE COURT FIRST OF RETALITORY ACTION
TAKEN AGAINST HIM NITZ THOUGHT HE SHOULD ALSO EXHAUST HIS ADMINISTRATIVE REMEDIES
PURSUANT TO THE ("P.L.R.A." 42 USC §1997 e(a). EXPLAINED IN BOOTH v. CHURNER, ("U.S.")
CITATIONS UNKNOWN.")

3. FIRST, NITZ WOULD LIKE TO NAME, IDENTIFY, AND STATE THE TITLES OF PERSONS AND
PUBLIC OFFICIALS RESPONSIBLE FOR THE VIOLATIONS OF HIS STATE AND FEDERAL CONSTITUTIONAL
RIGHTS AND PROTECTED LIBERTY INTERESTS CONTRARY TO 42 USC §1983, §1985(2) & (3) —

**DUPAGE COUNTY JAIL**
**INMATE REQUEST/GRIEVANCE FORM**

FORM:SO-00422
REVISED:02/06

PRINT NAME: _____     DATE: _____

DOCKET NUMBER: _____     HOUSING LOCATION: D/L _____ POD _____ CELL _____

**CHECK ONLY ONE ITEM PER SLIP**

### LEGAL
- ☐ PUBLIC DEFENDER
- ☐ PROBATION

CASE # _____     COURT ROOM # _____

### ADMINISTRATIVE SERVICES
- ☐ SEE WATCH SUPERVISOR
- ☐ LAW LIBRARY
- ☐ OUTDATE/WARRANT CHECK
- ☐ HAIRCUT
- ☐ LETTER OF INCARCERATION REQUEST
- ☐ GRIEVANCE
- ☐ COMMISSARY AUDIT
- ☐ TRUSTY WORK REQUEST
- ☐ OTHER _____

### JUST of DUPAGE SOCIAL/EDUCATIONAL SERVICES
- ☐ ALCOHOLICS ANONYMOUS
- ☐ NARCOTICS ANONYMOUS
- ☐ ADDICTION EDUCATION/12 STEP
- ☐ AL-ANON (FEMALE ONLY)
- ☐ SUBSTANCE ABUSE COUNSELING
- ☐ DOCE PASOS DE VICTORIA
- ☐ ONE ON ONE COUNSELING
- ☐ RELAPSE PREVENTION/HEALING ADDICTIONS
- ☐ "TO COURT" LETTER (REQUEST OF ACTIVITIES ATTENDED)
- ☐ JOB READINESS
- ☐ GED
- ☐ BASIC COMPUTER TRAINING
- ☐ ANGER MANAGEMENT
- ☐ BOOK CLUB (FEMALE ONLY)
- ☐ PARENTING (FEMALE ONLY)
- ☐ TELEPHONE REQUEST

### JUST of DUPAGE RELIGIOUS SERVICES
- ☐ CATHOLIC WORSHIP
- ☐ MUSLIM WORSHIP
- ☐ CHRISTIAN WORSHIP/BIBLE STUDY
- ☐ CHAPLAIN, JUST of DUPAGE
- ☐ SCRIPTURE REQUEST (TYPE) _____
- ☐ ESTUDIO DE LA BIBLIA EN ESPANOL
- ☐ BIBLE STUDY CORRESPONDENCE COURSE

### JAIL CHAPLAIN SERVICES
- ☐ DEACON ANDREW, CHAPLAIN
- ☐ FATHER GREG, ASS'T. CHAPLAIN

### DUPAGE COUNTY HEALTH DEPARTMENT
- ☐ HEALTH EMPOWERMENT (FEMALES ONLY)
- ☐ OTHER _____

DESCRIBE (Use Reverse Side If More Space Is Needed)

_____
_____
_____
_____
_____
_____
_____

U.S.C.A. CONST. AMENDS. 1, 4, 5, 6, 8 & 14, ALSO; ART. IV, § 2 CLAUSE ONE. ILL ST. CONST. OF 1970 AT ARTICLE ONE § 1, 2, 4, 5, 6, 7, 8, 8.1, 9, 10, 11, 12, 13 & 16. ALSO; ILLINOIS SUPREME COURT RULES 411, 412(c) THROUGH 415(a), & 725 ILCS 5/121-1 et seq. 720 ILCS 5/31-4 et seq. ("OBSTRUCTING JUSTICE") NITZ ALSO REPEATS AND REALLEGES AND INCORPORATES BY REFERENCE EACH AND EVERY CLAIM RAISED BY HIM IN HIS AMENDED COMPLAINT THROUGH HIS COURT APPOINTED COUNSEL MR. EDMOND J. TREMBLAY OF LAW FIRM ARNSTIEN AND LEHR L.L.P. 120 S. RIVERSIDE PLAZA IL SUITE 1200 CHICAGO, IL 60606-3910 PHONE # (312) 876-7100 EXTENTION # 6676, GRACIOUSLY APPOINTED BY THE HON. WILLIAM J. HIBBLER IN "#08-C-0334, NITZ V. TONY ("doe"), et. al."

4. GLENDALE HEIGHTS POLICE OFFICER BUCHOLZ, DRUG TASK FORCE AGENT DON DARBY OF (" DU MEG.") DUPAGE METROPOLITAN ENFORCEMENT GROUP.

5. DUPAGE COUNTY STATES ATTORNEYS OFFICE PROSECUTER MICHAEL PAUL AND THOMAS O'CONNOR

6. JUDGE MARK A. DWYER AND JUDGE GEORGE J. BAKALIS 18th JUDICIAL CIRCUIT OF DUPAGE COUNTY.

7. DUPAGE COUNTY PUBLIC DEFENDER ANT's: MS. JOAN PANTSIOS, MARYSOL DIAZ, AND JEFFREY A. YORK. ALSO: PUBLIC NOTARY CAROL I. CAPONIGRO.

8. DUPAGE COUNTY JAIL SHERIFF DEPUTY'S AND EMPLOYEES: OWENS, SGT. MALONE AND VAN HOOSE ALSO: SGT. LORRIGAN, SGT. RYAN, DEPUTY SWANSON AND DI ACCARDO.

9. GLEN ELLYN POLICE DEPT. DETECTIVE ANTHONY TERRANOVA FORMERLY KNOWN AS TONY ("doe") AND OFFICER JOHN PERKINS # 55

10. NITZ REQUESTS HE BE ALLOWED TO NAME ABOVE PERSONS AS NEW DEFENDANTS PURSUANT TO THE FOLLOWING DESCRIBED VIOLATIONS IN BELOW PARA GRAPHS

11. NITZ EXPLAINED TO PANTSIOS THAT HE HAD MADE A DEAL WITH BUCHOLZ AND DARBY THAT HE HERMAN NITZ WOULD HELP POLICE PURCHASE CRACK COCAINE FROM CHI-CHI IF THEY WOULD RELEASE HIM AND ORTIZ ON RECOGNIZANCE BONDS, DRIVE THEM HOME TO ADDISON, AND GIVE HIM PROBATION, T.A.S.C. etc. POLICE TOLD NITZ IF HE WOULD AGREE TO WRITE A STATEMENT THAT THE PIPE WAS NITZ' THEY WOULD AGREE TO THIS DEAL AND THOUGH THE ALLEGED CRACK PIPE WAS NOT NITZ HE WROTE IN THE STATEMENT THAT IT WAS SO HE & ORTIZ WOULD BE GIVEN A DEAL & GO HOME THAT NIGHT.

12. DARBY VERIFIED INFORMATION THAT NITZ HAD WORKED FOR POLICE & TASK FORCES DU MEG AND RAT.T.L.E. BEFORE OBTAIN ARRESTS AGAINST TROY DEMOV, JIM HESTON, RORY OSBOURNE, WAYNE "FATMAN" CLINGER ROBERT BUNTLOCK, JIMMY SAM, PAUL COMITZ, GORDON PRATHER, AND OTHERS.

13. NITZ & ORTIZ WERE RELEASED AND DRIVEN HOME TO ADDISON BY DARBY, NITZ STAYED IN TOUCH WITH DARBY BY PHONE FROM A ADDISON AREA PAYPHONE & FROM VILLA PARK POLICE DEPT. DESPATCHERS PHONE.

14. NITZ HELPED POLICE PURCHASE CRACK COCAINE FROM CHI-CHI AND CASE NO # 05-CF-2101 FOR ALLEGED POSSESSION OF CRACK PIPE BUT CHI-CHI STOPPED RETURNING NITZ AND AGENT DARBYS PHONE CALLS.

15. NITZ FOUND OUT ORTIZ HAD TOLD CHI-CHI NITZ BROUGHT POLICE TO HER CAROL STREAM IL APT. # 01.

16. NITZ TOLD DARBY WHAT ORTIZ HAD DONE, AND TOLD HER NITZ (JOHN SLOVER) AND ORTIZ (ED COOK) WERE ASSIGNED THESE ALIAS IDENTITYS BY AGENT DARBY.

17. DARBY GOT UPSET.

18. AS A RESULT CHI-CHI STOPPED ALL ACTIVITY AND BECAUSE OF ORTIZ CHI-CHI SHUT DOWN ALL SALES

**DUPAGE COUNTY JAIL**
**INMATE REQUEST/GRIEVANCE FORM**

FORM:SO-0022
REVISED:02/04

PRINT NAME: _____   DATE: _____

DOCKET NUMBER: _____   HOUSING LOCATION: D/L _____ POD _____ CELL _____

**CHECK ONLY ONE ITEM PER SLIP**

---

**LEGAL**

☐ PUBLIC DEFENDER                    ☐ PROBATION

CASE # _____        COURT ROOM # _____

---

**ADMINISTRATIVE SERVICES**

☐ SEE WATCH SUPERVISOR               ☐ GRIEVANCE
☐ LAW LIBRARY                        ☐ COMMISSARY AUDIT
☐ OUTDATE/WARRANT CHECK              ☐ TRUSTY WORK REQUEST
☐ HAIRCUT                            ☐ OTHER _____
☐ LETTER OF INCARCERATION REQUEST

---

**JUST of DUPAGE SOCIAL/EDUCATIONAL SERVICES**

☐ ALCOHOLICS ANONYMOUS               ☐ JOB READINESS
☐ NARCOTICS ANONYMOUS                ☐ GED
☐ ADDICTION EDUCATION/12 STEP        ☐ BASIC COMPUTER TRAINING
☐ AL-ANON (FEMALE ONLY)              ☐ ANGER MANAGEMENT
☐ SUBSTANCE ABUSE COUNSELING         ☐ BOOK CLUB (FEMALE ONLY)
☐ DOCE PASOS DE VICTORIA             ☐ PARENTING (FEMALE ONLY)
☐ ONE ON ONE COUNSELING              ☐ TELEPHONE REQUEST
☐ RELAPSE PREVENTION/HEALING ADDICTIONS
☐ "TO COURT" LETTER (REQUEST OF ACTIVITIES ATTENDED)

---

**JUST of DUPAGE RELIGIOUS SERVICES**

☐ CATHOLIC WORSHIP                   ☐ SCRIPTURE REQUEST (TYPE) _____
☐ MUSLIM WORSHIP                     ☐ ESTUDIO DE LA BIBLIA EN ESPANOL
☐ CHRISTIAN WORSHIP/BIBLE STUDY      ☐ BIBLE STUDY CORRESPONDENCE COURSE
☐ CHAPLAIN, JUST of DUPAGE

---

**JAIL CHAPLAIN SERVICES**

☐ DEACON ANDREW, CHAPLAIN            ☐ FATHER GREG, ASS'T. CHAPLAIN

---

**DUPAGE COUNTY HEALTH DEPARTMENT**

☐ HEALTH EMPOWERMENT (FEMALES ONLY)
☐ OTHER _____

---

DESCRIBE (Use Reverse Side If More Space Is Needed)

_____
_____
_____
_____
_____
_____

of crack cocaine to Nitz and agents because Ortiz told her she was being set-up. Nitz went outside to Darby's vehicle and told Darby what Ortiz just told Nitz and Darby got very upset and told Nitz he was getting arrest warrants for Nitz as well as Ortiz for "unlawful possession of a controlled substance", and paraphanalia...."

19. Nitz told Darby that he should not be mad at Nitz because Nitz completed his end of the deal... and because Ortiz was the one who messed everything up that Darby should be mad at Ortiz only and not Nitz. Darby left and said he didn't want to hear it..."!!!"

20. Nitz was also on parole at this time and Darby had also spoke to the states attorneys office about this fact. It was decided that Nitz would also receive a low bond of $500.00 cash and that his parole would not be violated either as Nitz had actually been given explicit promise of probation etc., I-Bond, as well as Ortiz too, and as Nitz had actually secured a delivery for police against Chi-Chi. Nitz was able to be bonded out of jail on October 31st 2005 by Ortiz from the Dupage County Jail for $500.00 cash, only."

21. Based on the above information Pansios filed a motion to suppress the statement and or evidence as illegally obtained, inter alia....

22. Nitz was arrested later for trespassing and a parole detainer no-bond I.d.o.c. hold and arrest warrant as Nitz had failed to report to his parole agent Jimmy Dye for two months.

23. Nitz was later transported by his parole agent Jimmy Dye from the Dupage County Jail to the Stateville Correctional Center Northern Reception and Classification Center at Joliet, Illinois.

24. Nitz attempted suicide twice at Stateville and was hospitalized in prison psychiatric ward and at a local Joliet hospital at St. Josephs as Nitz hung himself and later cut both of his wrists and swallowed a razor blade too.

25. Nitz was placed under care of psychiatrist Dr. Corcoran M.D. who prescribed psychotropic medications for Nitz with periodic visits by other psychiatrists.

26. Nitz was transported back and forth from Stateville to Dupage County on Court writs etc. Nitz court appointed counsel and assistant prosecutor had previously denied on other court appearances that Nitz had worked for police at all on the court record.

27. Asst. P.D. Joan Pansios, and prosecutor Mr. Michael Paul both had actual knowledge that Nitz had actually been coerced by police to sign a statement and based on promise of a personal recognizance bond for Nitz and Ortiz as well as probation etc. allowed Nitz who was also on parole to work for police agents and to go free on two separate bonds ("I-Bond and Cash Bond") Nitz also completed his end of the deal police made with him as Nitz actually secured a delivery of crack cocaine charge as he introduced agent to "Chi-Chi" as his boss which resulted in "Chi-Chi" selling cocaine to undercover Du Mag agent. And though both Pansios and prosecutor Michael Paul had possession of this actual information denied these facts by their acts, omissions, misconduct and knowing use of perjured testimony and fabrication of evidence and probable cause in # 2005-CF-2101 thus conspired to retaliate or obstruct justice, and also;

willfully and wantonly without just or legitimate cause engaged in a tacit agreement to retaliate and or also to obstruct the due course of justice where through a collusion or intrigue promised, bribed, threatened, allowed, caused, thwarted, hindered, obstructed, delayed, impeded or otherwise withheld relevant witnesses and testimony material to the question of Nitz' guilt from being compelled at various critical stages of the original proceedings and due to Pansios deficient performance unprofessional errors, omissions, actions, etc. so upset the adversarial balance that actual prejudice was added against the defense and "but for" Pansios failure to act as a reasonable zealous or vigorous advocate required by the "sixth and or fourteenth" amendments of the United States Constitution as well as the Illinois constitution of 1970 at Art. I, § 2, 6 and 8 or U.S.C.A. Const. Amends at Article IV, § 2 of Clause one... or inherent in the Bill of Rights; Art. one § 1 to 24 of Ill. Const. of 1970; summarily denied and arbitrarily deprived Nitz of his constitutional rights and protected liberty interests promulgated thus "Asst. P.D. Ms. Juan Pansios and prosecutor Mr. Michael Paul A. – "custom, pattern etc. practice policy or procedure", designed as a direct and proximate result of a conspiracy prevented testimony of Don Darby, Carlos M. Ortiz, Chi-Chi, arresting Glendale Heights Police Officers, I.D.O.C. parole agent Jimmy Dye and or agents and members of police task forces "Du-Meg" or "B.A.T.T.L.E." from testifying on Nitz' behalf prevented by motive of retaliatory intent defeated due process and equal protection of the laws by discriminatory actions, omission, errors etc. intent; the defendants right to compel the attendance of above witnesses and privileges and immunities to receive benefit of immunity or to present factors in mitigation as Pansios and Mr. Paul meant to inflame the trier of fact or to cause or show actual prejudice to befall and or be addered against Nitz that also resulted in Pansios blatant refusal to raise the issue and burden of Nitz fitness due to his mental trauma and incompetence which were available and ripe pursuant to "725 ILCS 5/104-10 et seq. and also under the prevailing norms standard Pansios' representation fell far below an objective standard of reasonableness as all of Nitz' defenses were abandoned by Pansios due to a collusion with Mr. Paul to attempt to evade or escape criminal or civil liability for the above described misconduct as Judge Dunker was not made aware of the above facts which would have been supported by the testimony of above named witnesses and psychiatrist Dr. Corcoran's testimony.

28. Pansios also failed to fulfill Nitz' request to withdraw his guilty plea and for a reduction of Nitz' sentence pursuant to Ill. S.Ct. Rules 604(d) or 605(b) thus because Nitz plea was not intelligently, knowingly or voluntarily entered Nitz rights under Ill. S.Ct. Rule 402 were also denied as Pansios possessed actual knowledge which demanded collateral or direct action defined in the rules of state and or federal rules of appellate procedure. Nitz also then tried to contact Pansios by letter from Stateville Bct. Pansios returned Nitz letter back to him unanswered. Nitz then sent a pro se "Petition for Relief from Judgment" to the Clerk of the Court Chris Kachiroubas under "735 ILCS 5/2-1401 et seq." from the Dixon S.T.C. Correctional Center ("a psychiatric prison") in November of 2006 but Nitz was told by prison law clerk (Asian male) and civilian I.D.O.C. prison library person Ms. Jill Straw (white female) to move to withdraw that "Petition for Relief from Judgment" for several reasons mainly that Nitz petition was missing relevant details which should have been included in his petition such as the above details as well as because Nitz had also failed to have his documents sent via "registered or certified mail" to the Clerk of the Court as per recent case law was newly "required" by law for in filing "§2-1401 petitions" etc. Nitz was told to withdraw his petition to avoid procedural default, res judicata, collateral estoppel effects or other form of waiver which would defeat scrutiny by a court of review in a state or federal appellate court if a review of the merits were actually made fin.

29. After Nitz completed serving his four year sentence Nitz was released from Dixon S.T.C. on June 27th, 2007. Nitz Dr. M. Langner recommended that Nitz apply for social security due to his mental disability upon release.

30. Nitz paroled to Jack Clarks 1/2 way house located near Fulton St. and Kedzie in Chicago, Illinois. Nitz then requested permission by I.D.O.C. office at #1-800-666-6744 to stay with his brother Larry Nitz at 1145 Surrey Dr. #G-3, Glen Ellyn, IL 60137 *(630) 705-1996. Nitz then later requested permission to stay at the P.A.D.S. program at 705 W. Liberty St. Wheaton, IL 60187.

31. Nitz met with P.A.D.S. supervisor Jennifer and parole agent Mr. Hall who was temporarily assigned as a courtesy to report to by Nitz until a decision could be reached as to where Nitz permanent address would be.

32. Nitz was told by P.A.D.S. supervisor as well as I.D.O.C. agent Hall that Nitz could not stay at P.A.D.S. and would have to return to his former approved residence at Jack Clarks 1/2 way house. Nitz however did not go back to Jack Clarks.

33. Nitz then hired attorney Mr. Ashley S. Rose, LLP at 799 Roosevelt Rd. bldg #6, Suite #104 Glen Ellyn, Illinois 60137 *(630) 790-9064 to assist Nitz with his disability claim.

34. On information and belief Nitz brother Kenneth C. Nitz and Carlos M. Ortiz were arrested and to get themselves out of trouble pursuant to witness inducements by police, gave false information about defendant to get leniency by police for themselves; as well as several other persons who state has not identified yet.

35. On 7-18-2007 Nitz was stopped by Glen Ellyn, Illinois police officer John Perkins #55. Perkins #55 and police Sargeant and other officers tried to accuse Nitz of breaking a window at CVS's camera store on Roosevelt Rd. in Glen Ellyn IL. Nitz was told by Perkins #55 and two other officers that he had been seen on video tape breaking the window. Then after being unlawfully detained at Glen Ellyn P.D. for six hours the police told Nitz they had been mistaken and that it wasn't Nitz on the video tape after all. However, Perkins #55 wrote Nitz a $75.00 citation for public intoxication and Nitz was released.

36. Nitz was not intoxicated however and $75.00 ticket issued by Perkins #55 was not pursued and was dismissed for want of prosecution.

37. After this date above Nitz noticed that officer Perkins #55 and other unknown and unidentified persons and strange vehicles would following Nitz all around Glen Ellyn and Dupage county areas. This made Nitz nervous as he was in constant fear of his safety. Nitz had also failed to do as his parole officer Mr. Hall requested and Nitz even saw agent Hall following him around Wheaton too.

38. Nitz failed to report to his parole officer for about four months and Nitz was told that he had an "I.D.O.C. No-Bond detainer hold & warrant" from family and friends Larry Nitz, Dawn Corbin, Kenneth Nitz and Carlos M. Ortiz, & that police had been looking for Nitz as well as parole agent Hall and others who Nitz brothers, Ortiz and others told certain people, gang members etc. that Nitz had set up "Chi-Che Fatty and Peanut" and that Nitz life was in danger as his own family and friends had betrayed him.

39. On the day of Nitz' arrest 10-22-2007, Nitz was biking to CVS pharmacy on Roosevelt Rd. in Wheaton, IL. Nitz noticed a tan S.U.V. following him an unidentified man who Nitz did not know yelled "Herman" and proceeded to pull out a gun". Nitz took off running north accross Roosevelt Rd. and Nitz ran into the side of a car that was moving at approx. 50 MPH with other traffic. Nitz bounced off the car and kept running and turned westbound. Nitz saw another person running east toward him so Nitz then ran south back accross Roosevelt Rd. into an apartment complex parking lot accross the road west of Blanchard south of Roosevelt and east of President St.

40. Nitz noticed a female driving in a Wheaton police cruiser appear on Blanchard St. heading south. Nitz stopped running and then a man with long hair appeared who was holding a steel whip baton. Nitz attempted to go around him and Nitz was struck in the side by this man injuring Nitz' ribs.

41. Nitz went down into some broken glass shards and badly cut his hand in three places and then this man kneeled on Nitz head with all his weight and broke Nitz tooth which Nitz was forced to swallow the tooth.

42. This man then identified himself as police and told Nitz he had a "bunch of warrants" he then handcuffed Nitz and threw Nitz property all around him and took $210.00 from Nitz wallet and put it into his own pocket.

43. A male who first pulled the gun on Nitz then showed up. Then the female Wheaton police officer showed up where Nitz was lying on the ground. Nitz was then placed in the backseat of her squad car and was driven to Wheaton police department.

44. Once at the police station Nitz requested medical care and a lawyer. A detective "Ted" introduced himself to Nitz as Nitz brothers old probation officer and also said he knew Carlos M. Ortiz too. The detective shook Nitz' hand and had got Nitz' blood on his own hand then got upset and went to immediately wash his hands. Nitz was told Glen Ellyn police wanted to see Nitz and were on the way to get him. Nitz was told to renew his requests for counsel and medical care with Glen Ellyn P.D.

45. About an hour later Glen Ellyn police officer John Perkins #55 arrived at Wheaton P.D. to get Nitz. Perkins was told the female W.P.D. officer had captured videotape footage of the chase and part of his arrest etc.

46. Perkins #55 placed Nitz in backseat of Glen Ellyn police cruiser and turned on the video camera inside police car. On the way to the Glen Ellyn police station Perkins told Nitz he had warrants for "Failure to appear in Glendale Heights field court for the "Public Intoxication" Ticket Perkins #55 wrote Nitz himself on 7-18-2007 as well as for an original charge for "Theft" as well as a warrant "I.D.O.C. no-bond detainer-hold- and no-bond arrest warrant issued by I.D.O.C. too for failure to report to parole officer in Chicago or Aurora Illinois parole office.

47. Upon arrival at Glen Ellyn police station Nitz requested medical care, to phone his brother Kenny and to contact Nitz' attorney Mr. Ashley S. Rose who's office was right there in Glen Ellyn Illinois at # (630) 790-9066 address: 799 Roosevelt Rd. bldg.#6, suite #104 Glen Ellyn, IL 60137. Nitz' requests were all denied. Nitz then requested appointment of an attorney free of charge consistent with the Miranda v. Arizona and Escobedo v. State of Illinois doctrines. Nitz' requests were again denied by female Sgt. Jean Halley #83 as she thought she could make a deal w/ Nitz

48. HARVEY #83 began to ask NITZ about a theft where $6000.00 worth of silver was allegedly stolen from a local church. NITZ denied knowledge of such offense.

49. PERKINS #55 was present and an unknown male corporal or sergeant periodically came in and out of the room during said interview.

50. HARVEY #83 mentioned to NITZ that if he were willing to cooperate she could help NITZ in various ways, ("i.e.") get NITZ into a program she knew of in Rockford, Illinois, or get NITZ a personal recognizance bond, probation, work release, T.A.S.C. program or drug court etc., NITZ said he could provide HARVEY #83 with information about other various crimes he knew were committed by certain persons as well as various drug dealers in both DuPage and Cook counties. NITZ provided HARVEY #83 with explicit details about the following persons:

51. "Lawrence F. NITZ, Steve Wiemann, John Wiemann, Carl Klinkenberg, Ed Mitchell and black girlfriend Natalie, Pedro, Sean, Derek, Fatty, Blue, Rico, Peanut & sisters, and Arab liquor store owners in Oakbrook Terrace Illinois at southeast region of Roosevelt Rd. and Ardmore Ave. NITZ provided HARVEY with details of the above persons such as "physical descriptions, vehicle descriptions, phone numbers, addresses, maps. And also what types of offenses were being committed by whom, what, where etc. (" drug dealers, thieves, burglars, fences etc.") NITZ in previous motions listed phone numbers, addresses and more specific details therein.

52. By the time NITZ and HARVEY #83 finished talking it had gotten late in the evening. HARVEY #83 told NITZ his information was awesome but, explained to NITZ that it had got too late for her to call NITZ' parole officers supervisor or the DuPage county states attorneys office that night and said that because NITZ had a "I.d.o.c. no-bond-hold-detainer-warrant" that she couldn't do anything for NITZ that night except get NITZ a low bond of $25,000 so all NITZ would need to bond out would be $2,500.

53. HARVEY #83 gave NITZ her phone # (630) 469-1187 and told NITZ she would be sending a detective "Tony" to the county jail in a couple of days to talk to NITZ for her to work out the final details of the deal she had made with NITZ for her.

54. Tony came to see NITZ three times at the DuPage county jail after NITZ arrest on 10-22-07 twice in October and once in November ("2007").

55. When NITZ first arrived at the jail 10-23-07 NITZ was feeling depressed and was suicidal and told the deputy and nurse this upon his intake and booking process NITZ was then placed on suicide observation and stripped naked and placed in a suicide cell.

56. The jail psychiatrist had ordered NITZ to go on observation and Tony came to see NITZ at the jail while NITZ was on suicide watch.

57. Though there was no doctors orders from the jail psychiatrist to do so deputy Van Hoose came to NITZ' cell and told NITZ to get ready to be interviewed by detective Tony. Deputy Van Hoose handed NITZ an orange jumpsuit and told NITZ to put it on and come along with him."

58. NITZ was taken out past the custody and confines of the jail without handcuffs or shackles or an armed police or sheriff deputy escort. Then NITZ was walked to a room where Tony was waiting. Another person was with detective Tony who NITZ did not know. NITZ thought it strange to be able to leave his cell and the jail itself at this point.

59. From prior experience, information and exposure to the law, jails, and psychiatric care at hospitals and prison wards, Nitz realized that without prior clearance from an actual psychiatrist he should not have been allowed to leave the suicide observation cell let alone leave the jails perameters without handcuffs, foot shackles, or without an armed police escort!!!! Nitz knew this was against police policy and psychiatric care policy too.

60. Once Nitz was seated Tony and Nitz went over all of the information that Nitz had given to Sgt. Harvey #83 originally on 10-22-2007 at the Glen Ellyn Police Station.

61. Tony wanted to be sure this information was correct before police could take any action to arrest any suspects to justify and to satisfy the principles and doctrines of probable cause.

62. Tony told Nitz he had to be sure this information would be good enough for the DuPage County States Attorneys Office to justify releasing Nitz on a personal recognizance bond and to get Nitz' "hold / detainer lifted by the Illinois Dept. of Corrections" ("I.d.o.c."), before Nitz could go to work for police.

63. Tony told Nitz that he would need help from States Attorneys Office with getting Nitz' "I.d.o.c. no-bond hold / detainer" lifted, as this would be a big obstacle to overcome, but Tony stated that he believed Nitz' information was good enough and also reliable too, as Tony told Nitz that he spoke to Du MEG agent "Don Darby and States Attorneys Office who told Tony about Nitz previous work with "B.A.T.T.L.E." and "Du MEG" assisting police with arrests of Sinny Sam, Wayne Olinger, Bob Buntrock, Rory Osbourne and ("April" a.k.a. "Chi-Chi").

64. Tony told Nitz that he was going to go speak to the DuPage County States Attorneys Office and get the I.d.o.c. holds lifted then he would obtain Nitz' personal recognizance bond approved as well as reporting instructions to I.d.o.c. upon Nitz' release. ("All of the above described events were captured by jails indoor video cameras on video tape at the jails booking area on first floor of the old building.")

65. Tony came back a second time to see Nitz at the jail also in October 2007, but this time Tony talked to Nitz through glass by voice monitor in first floor of old jail building in a booking chute.

66. Tony told Nitz his information was good enough for the State's Attorneys Office and that Nitz "I.d.o.c. no-bond hold & detainer had been lifted."

67. Tony also told Nitz that he also spoke to Nitz' parole officers supervisor and was told by him that Nitz was going to have to report daily via I.d.o.c. hotline at #1-800-666-6744 through Tony personally from Glen Ellyn police station. Tony also said he was going to talk to the DuPage County States Attorney's Office soon to get Nitz' personal recognizance bond finalized next, but the prosecutor that he usually dealt with "Mr. Michael Paul" was in trial and should be in touch soon.

68. Tony slid a piece of paper to Nitz with Tony's phone number #(630) 649-2375 which Tony wrote in his own handwriting for Nitz. Tony told Nitz he would be back in a couple days after things were all set. Tony told Nitz to call Tony if he remembered anything else. Nitz did make some calls to Tony and Harvey #83 also at #(630) 469-1187 and to #(630) 649-2375. Nitz had jail chaplain call Tony too.

69. This above described event also should have been picked up on the jails indoor video cameras again at first floor booking area of jails old building and preserved on video surveillance tape. As well a phone recordings on 4-T-pod and Chaplain Andrews conversation with Tony too. (10-27-07 also November 2007)

70. On November 2nd or 3rd, 2007 Tony came back a third time to the jail to talk to Nitz again.

71. Tony told Nitz that Nitz' brother Lawrence F. Nitz, Steve Wiemann etc. were arrested pursuant to information Nitz had provided to Harvey #83 originally on 10-22-2007, that; ("I.E.") that Nitz brother Larry Nitz had "H.I.V./A.I.d.S," "Hepatitis C Virus" and was being used by Steve Wiemann and John Wiemann to do burglaries in Wheaton and Winfield Illinois areas in Dupage County and that Nitz brother Larry was using his white Dodge van with blue pinstriping to help Wiemann's haul stolen merchandise from burglary scenes, such as; generators, tools, tractors etc. Nitz explained that he was worried about his brother and wanted to help him and knew that the Wiemann's had to be stopped to prevent them from continuing to use his brother and drug-addicted mentality as driver just for crack cocaine. Tony told Nitz ... "Good work..."!

72. Nitz explained that this was part of the reason why he gave all the information about the above drug dealers etc. to help his brother, to help himself, and to stop the Wiemanns and drug dealers from using his brother and drug addicted mentality as valued tool to help them keep feeding their cocaine habits.

73. Sgt. Lorrigan at the Dupage County jail also allowed Nitz to leave the custody and confines of the jail on ("11-2-07 or 11-3-07") again without handcuffs, foot shackles, or armed police/sheriff deputy escort etc., and Sgt. Lorrigan told Tony ... "Remember where you got him..."!

74. Nitz noticed that Tony was also holding a copy of the "Relief from Judgment Petition" Nitz previously filed in his previous case No# 05-CF-2101 from the Dixon S.T.C. Psychiatric prison he filed pursuant to 735 ILCS 5/2-1401 in 2006 and had also withdrawn. Tony held said copy in his hand.

75. Tony read some passages from this petition aloud to Nitz with references to "Don Darby", "Dansios" and prosecutor Mr. "Michael Paul" too.

76. Tony said previously to Nitz that "Darby" verified Nitz helped them purchase crack cocaine from ("April") A.K.A. "Chi-Chi". Nitz had not previously known Chi-Chi's real name was April. Nitz also realized Tony had just also made himself a material witness which supported Nitz previous allegations in case No# # 05-CF-2101 within contents of the "Suppression Motion" Dansios filed for Nitz, and the "Petition for Relief from Judgment Nitz filed for himself."

77. Tony however read from that petition and told Nitz that based upon what Nitz wrote, that, the prosecutor Michael Paul told Tony not to work with Nitz and Tony told Nitz that he ... "decided to take a pass on working with Nitz". Tony also told Nitz that the Illinois dept. of corrections ("I.d.o.c.") put the hold etc. back against Nitz as I.d.o.c. rescinded based on fact that Tony and Mr. Paul decided to take a pass on working with Nitz ... Tony then told Nitz to call him if Nitz had an epiphany and to write a statement and Tony would change his mind. Nitz told Tony he could not retaliate against him because Nitz filed his 5/2-1401 petition... Tony said ... "Watch me"... and left.

78. All of these above described events have also been captured on jail video tape by cameras on first floor booking area of jail's old building ("October & November 2007").

79. Nitz alleges that he told his attorney Jeff York about the above described events after Judge Bakalis appointed York to represent Nitz in case no# 2007-CF-2821

80. Though Nitz filed several pro se motions before Mr. York was appointed by the court Judge Bakalis refused to hear any of Nitz pro se motions and thus Nitz right to timely be heard regarding many important issues were ignored.

81. After Mr. York was appointed Judge Bakalis told Mr. York he could adopt Nitz' documents that Nitz filed pro se, but, York refused to do so! Nitz was already aware of several facts that Mr. York was not aware of regarding Nitz' substantial rights. Nitz also wanted to challenge the states factual bases and also wanted to have his arrest quashed for the illegal action and conduct of officers employed by Wheaton p.d. and Glen Ellyn p.d. as Nitz has already described above in explicit detail and also in his other previously filed pro se documents. ("see record of all documents Nitz has already filed.")

82. Mr. York and Nitz also spoke about problems Nitz had in the past with other asst. public defenders Harriet Gustafson, Jameson W. Kunz, Stephen Baker, and Joan Parsons on Nitz previous cases. York told Nitz this would probably cause future problems for Nitz in this new case.

83. Nitz alleges that some of the motions he previously filed in case no# 2007-CF-2821 had caused concern to him when Judge Bakalis ignored the very important issues Nitz wanted raised on the court record.

84. From Nitz' prior experiences with members of the Dupage county public defenders office "Parsons" and the Dupage county states attorneys office "Mr. Paul" in case no# 05-CF-2101 and "police", "Don Darby", Nitz realized the potential to bend the rules and for officials to break the law was a tangible, real and, existing fact, which was a legitimate cause for concern. Nitz wanted his attorney Mr. York, as well as Judge Bakalis, and other higher authorities to know about such facts and was extremely bothered by the fact that no one was taking him seriously, especially his own attorney "York" and "Judge Bakalis" too....

85. Nitz realized this was a very very serious problem which could affect his very life, as well as others whom he cared about, so thus, took initiative upon himself to try to make his claims known and prayerfully also heard perhaps too.

86. Nitz had spoke with York about several initial elements of his case which needed to be addressed, such as his actual innocence, the fact that the Wheaton p.d. had denied him medical care and demand for counsel; as well as Glen Ellyn p.d. also denying Nitz his right to medical care, to call his brother and his attorney Mr. Ashley S. Rose as well as his demand for appointment of free counsel pursuant to Miranda and Escobedo too. Mr. York told Nitz that police had found Nitz' fingerprints inside of the locked and closed jewelry display case, However, Nitz knew this was not true and told York so. Nitz was previously told by police Harvey #83 and Parkins #55 that when the crime was reported a church employee stated no one else had closed and locked the display case before the police could arrive to the scene. Thus the crime scene was actually compromised and the evidence was tainted. It bothered Nitz that York lied to him about this and Nitz told York so and was lying to him for no reason too.

87. Nitz knew there was no way any one had his fingerprints. So Nitz asked York to preserve, produce, and to expose alleged fingerprints to him. York said he did not have to show Nitz anything. This too bothered Nitz. Then he also asked York to show him the original charging instruments for pre-indictment theft offense, the failure to appear in court charge for the public intoxication ticket Nitz received from Perkins #55 on 7-18-2007. As well as the "I.d.o.c. no bond hold detainer - warrant etc." consistent with rules of discovery and Brady v. Maryland doctrine." York also said he did not possess such information either nor had to show it to Nitz if he did. This too was especially bothersome to Nitz as Nitz knew York was purposely obstructing Nitz right to review alleged discovery materials.

88. "Nitz then asked York to hire an expert forensic fingerprint witness to conduct scientific tests of the jewelry display case, the actual surface of the exact area alleged fingerprints had been dusted at. And the actual fingerprint lifts themselves." York said his boss would not approve funds for such a request to hire an expert and Nitz told York until he actually swore to ask his boss the question first that York wouldn't know that answer. Nitz realized that Mr. York was lying directly to his face and that York was laboring under divided loyalties and a conflict of interests, was serving two masters and thus at a critical stage of the adversarial and judicial proceedings York had become actually ineffective for failure to advocate a defense and refusing to perform his official duties and thus became Nitz adversary in reality.

89. Nitz then filed motions, petitions, complaints etc. complaining about Yorks deficient performance, but these motions, petitions & complaints were all denied or not heard at all though they were all colorable and meritorious. Judge Bakalis also got upset with Nitz and told Nitz to stop filing motions and or to either stop filing motions or for Nitz to represent himself.

90. This too bothered Nitz because he was trying to obtain relevant information to support claims of the violations of his substantial constitutional rights, protected liberty interests and privileges and immunities promulgated by clearly established state and federal constitutional law.

91. ("See reverse sides of pages 7 and 8 for pages 11 and 10") As Mr. York and Judge Bakalis were so opposed to Nitz efforts to help himself Nitz began to assert his rights himself to others; such as a federal civil rights complaint under 42 U.S.C. §1983 and §1985 (2) and (3). Case title: Nitz v. Tony doe, et al, #08-CV-0334. Nitz also previously filed many motions, petitions, complaints and grievances etc. Nitz also on April 1st, 2008 filed a post-conviction petition in case no. #05-CF-2101 with specific allegations against Asst. P.D. Mrs. Joan Pansios, Prosecutor Michael Paul, Du Page agent, Don Darby, Detective Tony, Glendale Heights P.D. etc. As well as two mandamus petitions, state habeas corpus petitions, motions to quash arrest and suppress evidence illegally obtained, a bill of particulars, affidavits, motion for a witness list, motions for a witness list, motions to dismiss charges of indictment, motion for speedy trial demand, also. Motion for speedy substitution of counsel outside the DuPage County public defenders office, for substitution of judge and a change of venue.

92. Nitz alleges that more retaliatory actions were taken against him as a direct and proximate result of the allegations he made against the elite local county government agents, police, judges and state officials employed by the state of Illinois, via DuPage County.

93. NITZ REALIZED HE HAD NO OTHER CHOICE AND BECAUSE NITZ WAS AWARE OF THE SPECIFIC DOCTRINES OF: "STARE DECISIS, RES JUDICATA, COLLATERAL ESTOPPEL, WAIVER THROUGH DELIBERATE BYPASS" AS WELL AS: "OTHER COURT OF REVIEW STANDARDS" SUCH AS: "ANY MATTER WHICH COULD HAVE BEEN RAISED ON APPEAL, BUT, WAS NOT IS WAIVED." ALSO: "MATTERS ALREADY DECIDED ON DIRECT APPEAL AS OF RIGHT CANNOT AGAIN BE RE-LITIGATED ANEW ABSENT AN ABUSE OF DISCRETION ON COLLATERAL ATTACK", AND: "A COURT OF REVIEW WILL NOT DISTURB THE DECISION OF A LOWER COURT ABSENT AN ABUSE OF DISCRETION WHERE WAIVER RULES WOULD BE RELAXED." etc....

94. IN LIGHT OF THE ABOVE DOCTRINE AND STANDARDS NITZ WAS FORCED TO DEFEND HIMSELF AND HIS OWN RIGHTS AS A DIRECT AND PROXIMATE RESULT OF THE INACTIONS OF COURT APPOINTED COUNSEL MR. YORK, AS WELL AS: THE PROSECUTIONS VIOLATING NITZ RIGHTS i.e. "O'CONNOR AND MR. PAUL" AND ABUSE OF DISCRETIONARY POWER BY "JUDGE BAKALIS." NITZ COULD NOT UNDERSTAND WHY HIS CLAIMS WERE NOT GETTING THE PROPER ATTENTION THEY DESERVED? AND THUS, WAS LEFT TO QUESTION THE MOTIVES, STATEMENTS, ACTIONS, OMISSIONS AND ERRORS OF BAKALIS, O'CONNOR, & YORK."?

95. FROM NITZ ARREST IN HIS PREVIOUS CASE, "#05-CF-2101", TO THE CURRENT STATE OF AFFAIRS IN THIS NEW CASE - "#07-CF-2821", AND, MOST-RECENT CASES "#08-CF-1049, #08-CF-1050 AND #08-CF-1051." NITZ POINTS OUT THAT THERE HAVE BEEN NUMEROUS ILLEGAL ACTIONS THAT HAVE OCCURRED THROUGHOUT THE PENDENCY OF ALL OF THE ABOVE CASES AND THEREFORE ASKS THE READERS TO CONSIDER ALL OF THE EVENTS DESCRIBED ABOVE AS WELL AS THE OTHER EVENTS DESCRIBED WITHIN THE BODY OF ALL PREVIOUS DOCUMENTS FILED AND TO THUS CONSIDER WHAT THE OUTCOME OF THE ABOVE EVENTS HAVE ACTUALLY PRODUCED AND ALSO WHETHER THOSE ISSUES WOULD HAVE BEEN RAISED, ADDRESSED AND THEN RECEIVED AND OR BEEN GIVEN FULL AND FAIR CONSIDERATIONS HAD NITZ NOT RAISED THESE ISSUES HIMSELF?"

96. PURSUANT TO BRADY V. MARYLAND, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963) A CONVICTION ON TESTIMONY KNOWN TO PROSECUTION TO BE PERJURED IS A DENIAL OF DUE PROCESS, SEE e.g.: "2 L.Ed. 2d 1575, AND: 3 L.Ed. 2d 1991 & 98 A.L.R. 4th..., SEE ALSO: PEOPLE V. JIMERSON, (Ill. 1995), 166 Ill. 2d 211, 209 Ill. Dec. 738, 652 N.E. 2d 278 NOTE 1...." THE STATES FAILURE TO CORRECT WITNESS FALSE TESTIMONY IS A DUE PROCESS VIOLATION' AND POLICE, PERKINS #55, HAWLEY #83, DETECTIVE TONY, ("GLEN ELLYN P.d.") AND: W.P.d. OFFICERS SHANKS, & CRADE, TED, O'CONNOR, YORK, MR. PAUL, PANSIOS, DARBY, BAKALIS AND LAWYER'S FAILURE TO CORRECT FALSE TESTIMONY AS WELL AS THAT OF GLENDALE HEIGHTS P.d., PAROLE AGENTS DYE AND MR. HAH ALLOWED FOR FALSE ARRESTS AND FABRICATIONS TO GO UNCORRECTED RESULTING IN RETALIATION, ILLEGAL ARREST, AS WELL AS ILLEGAL FRAUDULENT CONVICTION AND SENTENCE TO BE COMPOUNDED BY OTHER FACTS BY ALLOWING WITNESS MATERIAL TO THE QUESTION OF NITZ GUILT TO BE HIDDEN AND TO BECOME UNAVAILABLE AT CRITICAL STAGES OF THE ADVERSARIAL AND JUDICIAL PROCEEDINGS AND ALSO MATERIAL TO THE FACT OF NITZ MENTAL FITNESS & HIS INCOMPETENCE AND OTHER FACTORS IN MITIGATION TO ALSO BECOME UNAVAILABLE WHICH NITZ HAS TRIED TO RAISE IN BOTH #05-CF-2101 AND #07-CF-2821 WERE BLATANTLY IGNORED THOUGH NITZ HAD BEEN DECLARED AS RELIABLE WHICH FORMED BASIS OF DECISION OF DARBY, TONY, AND OTHER OFFICIALS CAUSING PROMISES TO BE ACTUALLY MADE etc. BEFORE THE ARRESTS OF STEVE & JOHN WIEMANN & NITZ' BROTHER LARRY AND OTHERS etc. ALLOWING NO-BOND I.D.O.C. DETAINERS, HOLDS, WARRANTS etc. TO BE LIFTED IN BOTH ABOVE CASES BUT WAS ALSO CAUSE TOO, "OF ALLEGED RETALIATION." AND BASED ON INFORMATION WITHIN NITZ "735 ILCS 5/2-1401 PETITION" DETECTIVE TONY ACQUIRED KNOWLEDGE FROM DARBY THEN USED INFORMATION AGAINST NITZ THAT PROSECUTOR PAUL AND ASST. P.d. PANSIOS, YORK, & O'CONNOR IN DENIED EVER OCCURRED AT ALL?

97. PROSECUTOR MR. PAUL WAS ALSO THE ORIGINAL PROSECUTOR AT THE START OF #07-CF-2821 THEN O'CONNOR TOOK OVER FOR MR. PAUL WHEN ABOVE FACTS GET HOT. THIS WAS A TACTICAL MOVE TO PREVENT OR AVOID MR. PAUL FROM HAVING TO ADMIT TO ABOVE FACTS IN ABOVE PROCEEDINGS!

98. Then Mr. York, prosecution, and; the Court after realizing that Nitz actually had recognized and remembered A.S.A. Mr. Michael Paul was the same prosecutor in #05-CF-2101, tried to deny above facts, and; then before Judge Burke in Courtroom #4010 on 3-26-08 or on 3-27-08 Nitz realized at this point that O'Connor had suddenly replaced Mr. Paul? Mr. York refused to tell Nitz Mr. Paul's name, so Nitz accused Mr. O'Connor of being Mr. Paul etc. This in turn caused Mr. O'Connor to identify who Mr. Paul really was at Nitz' next court date before Judge Bakalis in Courtroom #4000 on or about 3-31-2008! This Nitz realized was a severe tactical move designed to confuse him as to above details and also was another overt action also designed to prevent above facts from being found out and disclosed to prevent and help above officials escape civil or criminal liability in #07-CF-2821 and #08-CV-0334, or. #05-CF-2101.

99. Prior to 4/17/08 Nitz had obtained a job as a trusty 2-C-12 pod, but. After Perkins #55 came to the jail on 4-17-08 and took Nitz "inked" fingerprints in #08-CF-1049, #08-CF-1050 and; #08-CF-1051 Nitz' bond was then raised from $25,000 less 10% requiring only $2,500 cash for release. to $175,000 less 10% requiring $17,500 cash for jail release. Nitz lost his job as a trusty — as prisoners; "with bonds at $100,000 or more cannot work as trusty's. After Perkins #55 threatened Nitz, Perkins #55 then also stated; "so how did you like being a trusty...?" Then shortly thereafter from the weeks of "4-17-08 to 5-12-08" Nitz was mysteriously called to "go to work at the jail law library"? (strange things occurred)
* when Nitz went to work "a Dupage County prosecutor" (Latin male) was seated in the jail law library "wearing an orange jumpsuit?" Nitz was then asked to physically "touch" and "move" wooden book cases to the basement of the jail on a "push cart" the basement storage area contains "contraband" items" off limits to prisoners"; about 2 days later Nitz was again called to work at library and was asked to "touch" and "remove" metal plates & support brackets for shelving and to stack these items on another push cart in law library office area. All of the above described events were supervised at various times by Sheriff Deputy "Swanson" (at all times in actual library), "DiAccardo" (once to basement wood shelves) "Rapa" & Soujay "(Law library) and "Usher" 4-17-08 ("fingerprints with Perkins - Young and Rapa too") All times above were on first shift 8 to 3 pm ("thereabout") between "4-16-08 visiting room on 2nd floor by 2 cpt - 2 uvw - 2 xyz visitors area (" Alvarez and Joe Zygilski") and 5-12-08". All these events were captured on jails indoor video surveillance video on 2nd floor jail law library to basement storage by "Di Accardo" (basement and 2nd floor hallway, of new bldg. elevators, of new and old bldg." Usher, Di Accardo" (4-17-08 to 5-12-08). Nitz fears that officials are trying to fabricate and plant evidence through above described illegal methods Nitz actually touched; and because Mr. York never failed to ever move to "preserve, produce, expose or hire an expert, or moved to retain the video footage specific to dates 10-22-07 to 11-2-07 or 11-3-07 or 4-16-08 to 5-12-08 or business records or of his & others movements in and out of the jail, professional visitors logs etc., psychiatric & medical records specific to "Deputy Van Hoose, Detective Tony and Sgt. Lonnigan" ("10-22-07 to 11-3-07") Nitz demands order for above described materials will be issued "without delay for production and inspection." "or"; will be to issue an order to suppress and exclude any and all prosecution evidence as compromised - tainted - suggestive - excluded and inadmissible as for past six months prosecution and Mr. York have failed to perform their duties though Nitz has diligently sought and requested by demand to have above duties specifically performed as the record in #07-CF-2821 reflects specifically while Nitz has been continuously incarcerated as a pre-trial detainee at the Dupage County Jail from 10-22-2007 to present date. And there was no valid or just reason to deny or to delay these reasonable requests which are supported by the Illinois Supreme Court decisions and Ill. S. Ct. Rules which dictate discovery under 725 ILCS 5/114-13 et seq. If above is denied; Nitz demands a change of venue, substitution of Judge and counsel without further delay!

100. On June 10th, 2008 the state prosecutor O'Connor brought an envelope sealed with evidence tape containing alleged photographs of fingerprints (2 - out of 27) photographic fingerprints were alleged to be Nitz and Nitz noticed the evidence tape seal had been opened on two previous occasions. Nitz stated that York should definitely now be persuaded to hire an expert witness for obvious reasons, as envelope was opened for unknown reasons on two previous dates, that it took 8 months to see fingerprints and only after Perkins* came back to jail on 4-17-08 to mysteriously take three ("3") more full sets of "inked" fingerprints instead of using standard lazer print scanning machine for taking fingerprints as is new practice. And because the prints were just photographs Nitz requested that a qualified expert would scientifically test the film, negatives, dates of film development and where and also produce the alleged surfaces prints were actually lifted from.

101. York told Nitz off the record that he did not care about Nitz' opinion.

102. Nitz requested that he would be appointed other counsel as Nitz could not trust York, but Bakalis again refused to substitute York with counsel outside of the DuPage county public defenders office despite Bakalis' actual knowledge of all of the above facts which was manifestly erroneous and an abuse of discretion and also a unlawful judicial usurpation of power in violation of 28 USC §1651(a) as well as Brady v. Maryland, 373 U.S. 83 (1963) and Jencks v. United States, 353 U.S. 657 (1957) and Illinois Supreme Court Rules 402 and 411, 412, 412(c) through 415 (a) Nitz had the right to compel discovery motion and an expert to test these materials but Jeff York again refused to do so, therefore new counsel should then have been required to be appointed to protect Nitz rights and because of a conflict of interests, divided loyalties and prejudice caused as a result of Yorks prejudicial omission and unprofessional errors the outcome of the proceedings would have been different and beneficial to Nitz defense as expert & other witnesses would have exposed official misconduct and fabrication of evidence.

Respectfully
Date: 6-15-2008.                    Herman L. Nitz Jr.

Proof/Certificate - Declaration of Service and Verification by Certification

I, Herman Nitz declare pursuant to penalty of perjury 28 USC §1746 that on this 15th day of June 2008 I caused this motion to be placed in the United States mailbox at 2-X-06 pod at DuPage County Jail and caused copies to be sent to defendants through their counsel Mr. Knight and also to the clerk of this court on above date. I declare all statements above are all true and correct.

Respectfully Submitted by
Herman L. Nitz Jr. I.R. # 42337
Herman L. Nitz Jr.
DuPage County Jail
P.O. Box 957
Wheaton, IL 60189-0957

**DUPAGE COUNTY JAIL**
**INMATE REQUEST/GRIEVANCE FORM**

FORM:SC-00422
REVISED: 02/06

PRINT NAME: _____   DATE: _____

DOCKET NUMBER: _____   HOUSING LOCATION: D/L _____ POD _____ CELL _____

CHECK ONLY ONE ITEM PER SLIP

**LEGAL**
- ☐ PUBLIC DEFENDER
- ☐ PROBATION

CASE # _____   COURT ROOM # _____

**ADMINISTRATIVE SERVICES**
- ☐ SEE WATCH SUPERVISOR
- ☐ LAW LIBRARY
- ☐ OUTDATE/WARRANT CHECK
- ☐ HAIRCUT
- ☐ LETTER OF INCARCERATION REQUEST
- ☐ GRIEVANCE
- ☐ COMMISSARY AUDIT
- ☐ TRUSTY WORK REQUEST
- ☐ OTHER _____

**JUST of DUPAGE SOCIAL/EDUCATIONAL SERVICES**
- ☐ ALCOHOLICS ANONYMOUS
- ☐ NARCOTICS ANONYMOUS
- ☐ ADDICTION EDUCATION/12 STEP
- ☐ AL-ANON (FEMALE ONLY)
- ☐ SUBSTANCE ABUSE COUNSELING
- ☐ DOCE PASOS DE VICTORIA
- ☐ ONE ON ONE COUNSELING
- ☐ RELAPSE PREVENTION/HEALING ADDICTIONS
- ☐ "TO COURT" LETTER (REQUEST OF ACTIVITIES ATTENDED)
- ☐ JOB READINESS
- ☐ GED
- ☐ BASIC COMPUTER TRAINING
- ☐ ANGER MANAGEMENT
- ☐ BOOK CLUB (FEMALE ONLY)
- ☐ PARENTING (FEMALE ONLY)
- ☐ TELEPHONE REQUEST

**JUST of DUPAGE RELIGIOUS SERVICES**
- ☐ CATHOLIC WORSHIP
- ☐ MUSLIM WORSHIP
- ☐ CHRISTIAN WORSHIP/BIBLE STUDY
- ☐ CHAPLAIN, JUST of DUPAGE
- ☐ SCRIPTURE REQUEST (TYPE) _____
- ☐ ESTUDIO DE LA BIBLIA EN ESPANOL
- ☐ BIBLE STUDY CORRESPONDENCE COURSE

**JAIL CHAPLAIN SERVICES**
- ☐ DEACON ANDREW, CHAPLAIN
- ☐ FATHER GREG, ASS'T. CHAPLAIN

**DUPAGE COUNTY HEALTH DEPARTMENT**
- ☐ HEALTH EMPOWERMENT (FEMALES ONLY)
- ☐ OTHER _____

DESCRIBE (Use Reverse Side If More Space is Needed)

_____
_____
_____
_____
_____
_____