# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HERMAN L. NITZ, JR. (#N-08438), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 C 0334 |
| v. ) | |
| ) | Hon. William J. Hibbler |
| JOHN DOE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, currently a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that Wheaton police officers used unjustified force when they arrested him, that the City of Wheaton has a pattern, custom, and practice of permitting its police officers to use excessive force, that a Glen Ellyn police officer retaliated against the plaintiff for a prior lawsuit, and that a staff dentist at the DuPage County Jail acted with deliberate indifference to his serious dental needs.[1] This matter is before the court for ruling on the City of Wheaton's motion for summary judgment as to Count IV of the Third Amended Complaint and the plaintiff's cross-motion for summary judgment as to all defendants. For the reasons stated in this order, the City's motion is granted and the plaintiff's motion is stricken for failure to comply with the requirements of Fed. R. Civ. P. 56 and Local Rules 56.1 (N.D. Ill.).

---

[1] By Minute Order of February 20, 2008, the court specifically cautioned that the plaintiff was required to file separate lawsuits in connection with claims not involving a common nucleus of facts. *See* Fed. R. Civ. P. 18(a) and 20(a); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Nevertheless, each amended complaint filed by former counsel contained improperly joined claims. However, dismissing unrelated claims now would be unfair to the plaintiff, who would now face statute of limitations problems if he were to re-file separate actions.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

## FACTS

The City of Wheaton filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with its motion for summary judgment, the City included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [document no. 131], as required by circuit precedent. That notice clearly explained the requirements of the Local Rules and warned the plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). The notice specifically provides:

> Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:
>
>> (3) a concise response to the movant's statement that shall contain
>>
>> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>>
>> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir.

2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . . . repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1." *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite these admonitions, the plaintiff has not responded to the City's statement of uncontested facts in the manner required. Instead, he has simply filed a cross-motion for summary judgment accompanied by some 177 pages of affidavits and random exhibits. The plaintiff does not cite any authority for any of the factual propositions he makes.

The court need not examine the plaintiff's voluminous exhibits. A district court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Bordelon*, 233 F.3d at 529. And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993). Unsupported statements in a brief are not evidence and cannot be given any weight. *See, e.g., Johnson v. Spiegel, Inc.*, No. 02 C 0680, 2002 WL 1880137, at *4 (N.D. Ill. Aug. 15, 2002) (Pallmeyer, J.), *citing In the Matter of Morris Paint and Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985).

The court need not "scour the record to make the case of a party who does nothing." *Greer v. McCurry*, No. 02 C 4326, 2003 WL 21826549, *6 (N.D. Ill. Aug. 5, 2003) (Zagel, J.)., *quoting Johnson v. Gudmundsson*, 35 F.3d 1104, 1116, n. 9 (7th Cir. 1994); *see also Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1989) (the court is not required to comb the record for evidence contradicting the moving party's statements in support of its motion for summary judgment). "Rule 56 demands something more than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the

existence of the truth of the matter asserted." *McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir. 1989.) "Summary judgment is the 'put up or shut up' moment in a lawsuit. Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (citations omitted).

Because the plaintiff is proceeding *pro se*, the court will grant him some leeway and consider the factual assertions he makes in his summary judgment materials. However, the court will entertain the plaintiff's factual statements only to the extent that he could properly testify about the matters asserted. Among other things, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602.

The following facts relevant to the plaintiff's claims against the City of Wheaton, Illinois, are therefore deemed undisputed for purposes of the defendant's motion: On October 22, 2007, defendants Shanks and Craig, two Wheaton police officers, arrested the plaintiff in Wheaton following a foot chase. (Third Amended Complaint, ¶¶ 11-12.) Although the plaintiff voluntarily surrendered, one of the two arresting officers at the scene proceeded to beat the plaintiff in the ribs with a metal baton, knocking him to the ground.[2] (*Id.*, ¶ 14.) The plaintiff landed on broken glass, thereby sustaining severe cuts to his hand. (*Id.*, ¶ 15.) As the plaintiff lay helpless on the ground,

---

[2]The court is setting forth only those allegations pertaining to the plaintiff's claim against the City of Wheaton. The court is accepting the allegations in the third amended complaint as true only for purposes of this motion. The court nevertheless notes that, in their affidavits and depositions opposing the plaintiff's motion for summary judgment, Officers Shanks and Craig have disputed the plaintiff's allegations almost in their entirety.

5

the officer also hit him in the jaw with his knee, breaking the plaintiff's tooth. (*Id.*, ¶ 16.) There was no reason for the officer to resort to the use of force. (*Id.*, ¶ 17.)

The plaintiff's wallet fell to the ground during the fray. (*Id.*, ¶ 18.) The officer who had allegedly assaulted the plaintiff picked up the wallet, inspected it, and pocketed about $210.00 in cash that was inside the wallet. (*Ibid.*) The arresting officers handcuffed the plaintiff and forced him to remain on the ground, lying in glass, until a squad car arrived to transport him to the police station. (*Id.*, ¶ 20.)

In October 2007, the City of Wheaton had no express policy or rule in place permitting its police officers to use force against an arrestee who had peacefully surrendered. (Defendant's Exhibit B, Affidavit of Deputy Police Chief Thomas Meloni, ¶ 3.) The Wheaton police department had guidelines in place regarding the use of force and deadly force. (*Id.*, ¶ 4 ; *see also* "Policy A - Use of Force," Exhibit 1 to Meloni Affidavit.) Under departmental policy,

> Officers are authorized to use department-approved control techniques and authorized weapons for the resolution of incidents, as follows:
>
> 1. To stop potentially dangerous and unlawful behavior.
>
> 2. To protect the officer and/or any other person from injury.
>
> 3. To protect persons from injuring themselves.
>
> 4. To effect a lawful arrest when the arrestee offers resistance.

(Policy A, p. 2, Section II(A).)

The policy statement directed officers to assess each incident to determine the level of control that was "reasonably appropriate" to "gain control over a resistive subject's actions and/or stop the physical threat from a subject." (*Id.*, Section II(B).) Officers were also cautioned to "exercise reasonable discretion and decide which technique(s) and/or authorized weapon(s) [would]

6

reasonably de-escalate the incident and bring it under control and/or stop the physical threat." (*Id.*, Section II(C).)

The detailed plan goes on to outline levels of resistance, levels of control, and use-of-force options. (*Id.*) All Wheaton officers are informed of the City's use-of-force policy and are trained in appropriate ways to make arrests without the use of force. (Meloni Affidavit, ¶ 6.)

At the time of the plaintiff's arrest, there was no express policy or rule permitting police officers to steal money from arrestees. (*Id.*, ¶ 8.) Such conduct would be a crime; therefore, theft is and was expressly forbidden both by state law and by Wheaton Police Department policy. (*Ibid.*)

As patrol officers, neither Craig nor Shanks had final policy-making authority for the Wheaton Police Department. (*Id.*, ¶ 9.)

## DISCUSSION

There is no genuine dispute as to any material fact relating to the plaintiff's claims against the City, and the court concludes that the City is entitled to judgment as a matter of law on Count IV of the Third Amended Complaint. Even assuming (without finding) that Wheaton police officers engaged in the misconduct described by the plaintiff, he has failed to adduce any evidence whatsoever that the alleged malfeasance was the result of either improper training or supervision, or a municipal custom, policy, or practice.

The plaintiff has no viable claim against the City of Wheaton under the circumstances of this case. The doctrine of *respondeat superior* (blanket municipal liability) does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Monell v. New York Dept. of Social Services*, 436 U.S. 658, 691 (1978); *Thompson v. Boggs*, 33 F.3d 847, 859 n.11 (7th Cir. 1994) ("*Monell* expressly holds that there is no cause of action for *respondeat superior* liability against a municipal

7

corporation under 42 U.S.C. § 1983"). "[A] local government may not be sued under §1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694.

Instead, it is when the execution of a governmental policy or custom inflicts the injury that the government as an entity is responsible under Section 1983. *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 674-675 (7th Cir. 2009), *citing Monell*, 436 U.S. at 694. A municipality cannot be held liable for a constitutional violation in the absence of a custom, policy or practice that effectively caused or condoned the alleged constitutional violations. *See, e.g., Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010); *Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006); *Monell*, 436 U.S. at 694. The policy or custom must be the "moving force" behind the alleged constitutional deprivation. *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). A plaintiff must show a "direct causal link between the municipal policy and the constitutional deprivation." *Arlotta v. Bradley Center*, 349 F.3d 517, 522 (7th Cir. 2003).

To establish an official policy or custom, a plaintiff must show that his constitutional injury was caused by: (1) the enforcement of an express policy; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a usage or custom with the force of law; or (3) a person with final policy-making authority. *Wragg*, 604 F.3d at 468 (citations omitted).

Here, the plaintiff has failed to establish a triable issue as to the existence any of the three possible bases for municipal liability. First, there is no express municipal policy authorizing excessive force or theft by law enforcement officers; quite the contrary, the City had a policy in place in October 2007 governing and restricting the use of police force, and state law bars theft.

8

The record likewise fails to support an inference that a *de facto* unconstitutional municipal policy or custom exists or existed. The plaintiff's conclusory charge that a widespread practice exists, without any factual foundation, is insufficient to defeat summary judgment. A policy or practice claim "requires more evidence than a single incident to establish liability." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (a single random incident of excessive force does not establish a custom or policy), *citing City of Oklahoma v. Tuttle*, 471 U.S. 808, 822, (1985); *accord, Bergstrom v. McSweeney*, 294 F. Supp. 2d 961, 968 (N.D. Ill. 2003) (Grady, J.). A custom or policy cannot be attributed to the City on the basis of one incident.

Nor can the plaintiff satisfy the third alternative. "In order to have final policymaking authority, an official must possess responsibility for making law or setting policy, that is, authority to adopt rules for the conduct of government." *Rasche v. Village of Beecher*, 336 F.3d 588, 599-600 (7th Cir. 2003) (internal punctuation and citations omitted). "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Id., citing Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). As patrol officers, neither Officer Craig nor Officer Shanks can be considered a person with final policymaking authority for the Wheaton Police Department.

A city may, under certain restricted circumstances, be held liable under Section 1983 for the inadequate training of its employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). However, a municipality is responsible only where its policies are the "moving force behind the constitutional violation. Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming

9

be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Ibid.* (citations and internal quotations omitted).

In the case at bar, the plaintiff has simply cited the legal term "failure to train;" he has not refuted the Deputy Police Chief's sworn testimony that all officers are, in fact, trained in the appropriate use of force. Nothing in the record suggests that any failure to train was tantamount to deliberate indifference toward the constitutional rights of citizens. *Compare Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000).

> *Monell*'s rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. . . . In order to ensure that isolated instances of misconduct are not attributable to a generally adequate policy or training program, we require a high degree of culpability on the part of the policymaker. Coupled with a causation requirement, this standard ensures that the violation alleged is not too far removed from the policy or training challenged as inadequate. Taken together, these two considerations amount to a requirement that liability be based on a finding that the policymakers have actual or constructive notice that a particular omission that is likely to result in constitutional violations.

*Palmquist v. Selvik*, 111 F.3d 1332, 1344 (7th Cir. 1997). To hold otherwise would risk creating *de facto* respondeat superior liability, which is contrary to *Monell*. *Id.* The plaintiff's wholly unsupported allegation that the arresting officers were not properly trained cannot withstand the defendants' motion for summary judgment.

Finally, even if the City of Wheaton indemnifies or insures its police officers, such indemnification does not, as the plaintiff argues, amount to tacit authorization of police misconduct. Indemnification and custom and policy are completely differently issues. *See, e.g., Beal v. City of Chicago*, No. 04 C 2039, 2007 WL 1029364, *1 (N.D. Ill. Mar. 30, 2007) (Kendall, J.); *Robinson v. Lother*, No. 04 C 2382, 2004 WL 2032120, *1 (N.D. Ill. Sep. 1, 2004) (Andersen, J.). Whether

or not the City is responsible for paying any judgment in the event that the plaintiff ultimately prevails against the individual policy officers, *see, e.g., Carver v. LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003), the plaintiff has no viable separate cause of action against the City.

In short, without any evidence demonstrating a nexus between the plaintiff's injury and an alleged policy or custom on the part of the City of Wheaton, the City cannot be held liable for the alleged wrongdoing on the part of the arresting officers. Accordingly, the City's motion for summary judgment is granted as to Count 4 of the Third Amended Complaint. The City of Wheaton is terminated as a defendant pursuant to Fed. R. Civ. P. 56. The plaintiff may proceed only against Wheaton police officers Craig and Shanks individually.

**Plaintiff's Motion for Summary Judgment**

The plaintiff's motion for summary judgment is stricken for failure to comply with basic filing requirements. As noted *supra*, because the plaintiff is proceeding *pro se*, the court has considered the motion to the extent that it addresses the City's motion for summary judgment. However, henceforth the plaintiff will be strictly held to the requirements of the court's Local Rules. The clerk will provide the plaintiff with copies of Local Rules 56.1 and 56.2 (N.D. Ill.), along with a copy of Fed. R. Civ. P. 56. The court will address defendant Terranova's pending motion for summary judgment in a separate order.

## CONCLUSION

For all of the foregoing reasons, the City of Wheaton's motion for partial summary judgment [#128] is granted. At the close of the case, the clerk is directed to enter summary judgment in favor of the City of Wheaton on Count IV pursuant to Fed. R. Civ. P. 56. The City of Wheaton is terminated as a defendant. The plaintiff's cross-motion for summary judgment [#136] is stricken.

The clerk is directed to mail the plaintiff copies of Fed. R. Civ. P. 56 and Local Rules 56.1 and 56.2 (N.D. Ill.).

Enter: *Wm. J. Hibbler*

WILLIAM J. HIBBLER
United States District Judge

Date: 11/22/10